The opinion of the court was delivered by
Watkins, J.
Plaintiffs claim, in joint ownership, certain lands situated in the parish of Jackson, and to which they derived title by inheritance from their father, James Surget, who died in the State of Mississippi in 1856. They aver that they, as the sole heirs of the deceased, have been in possession of said lands ever since his death, they having unconditionally accepted his succession. They represent that the defendant claims said lands under and by virtue of a certain tax adjudication thereof to him, made and executed by the Tax Collector on the 24th of June, 1881, in purported satisfaction of the taxes of certain years therein indicated. That said purported conveyance to said Newman is absolutely null and void, and did not pass to him any title because of certain alleged patent, absolute nullities, which are discoverable on a simple inspection of the act.
The prayer of their petition is, that the sale to the defendant be declared absolutely null, and they be recognized as owners of the property. The proees verbal of the tax adjudication is annexed to and made a part of plaintiff’s petition.
To this action the defendant tendered a plea of no cause of action, and plead the prescription of three years under Sec. 5 of Act 105 of 1874.
On the trial this plea of prescription was sustained and suit dismissed at plaintiffs’ cost. From this judgment the plaintiffs have appealed.
From all that appears in the petition and tax title, it is manifest *779 that there is no merit in the exception of no cause of action, and hence our opinion must turn upon the prescription of three years.
The language of the statute relied on is as follows, viz:
“Any action to invalidate the title to any property purchased at tax sale, under and by virtue of any law of this State, shall be prescribed by the lapse of three years from the date of such sale.” Evidently, then, the questions to be examined and determined, under this plea, are: first, whether this is an action to invalidate a title to property, purchased at- tax sale; second, was such sale made under and by virtue of any law of this State; third, from what time is the three years’ prescription to be computed.
The provisions of this statute have been frequently invoked as being applicable to suits seeking the revocation of tax sales, made under different laws of the State, but they have been applied in but two reported decisions of this court, and they are of recent date.
In one of thqse, Barrow vs. Wilson, 39 An. 410, we said:
“ It is a mistake to treat this statute as one intended to cure defects in tax titles. It is a statute of prescription, barring an action regardless of the merits or demerits of either title. * * * The statute does not concern itself with the strength of one title, or the weakness of another. ’ ’
In the more recent case of McDougal vs. Monlezun, 39 An. 1005, in which we treated of this plea of prescription, the plaintiff grounded his action in nullity on certain alleged “illegalities, irregularities and informalities” in the assessment of the property, and in the proceedings antecedent, and leading up to the tax sale,. Amongst them were enumerated: first, omission to list the property as belonging to a non-resident; second, omission to sell lands in fifty-acre lots, as required under- Oonstitution of 1868; third, insufficient and defective description of property; fourth, insufficiency and irregularity of advertisement of the property for sale. - But we held that as this statute was “not intended to cure defects in tax titles,” it must be considered “and held to be an impassable barrier, which eliminates the very right of the court to investigate or o.onsider the grounds of alleged nullity in the tax sale.”
These two opinions make it very plain that in giving effect to this prescription, we are not to be limited or restricted to such tax titles as shall contain no illegalities, irregularities, or informalities, either in the assessment, or sale proceedings; for such titles are good, and *780 do not need the help of prescription. Hence, we say, that this statute bars the action to annul, regardless of the merits or demerits of the title; and “ eliminates the right of the court to investigate or consider such grounds of alleged nullity,” as those specified in the tax sale attacked by MeDougal in that case.
But, in the instant ease, plaintiffs’ contention is, that the bar of the statute does not apply, because — amongst other reasons assigned— there was no law of the State which authorized the sale made to the defendant, and that this is a badge of absolute, incurable nullity, which is apparent from an inspection of the act, and is specially-averred in their petition. Or that, in the sense of the second question to be determined under this statute, in applying the bar of prescription, the sale to the defendant does not affirmatively appear, by the recitals of the act, or from the face of the papers offered for our consideration on the trial of defendant’s plea, that the tax title assailed, was made under and by virtue of any law of this State; and,, hence, it is not covered by or included in the terms of the statute invoked.
The averment of the petition is that the sale purports to have been made on the 21st of May, 1881, in satisfaction of the taxes assessed against the estate of James Surget for the yeai’S 1878, 1874, 1875, 1876, 1877, 1878 and 1880, amounting in the aggregate to $1697.50; but, that if said sale was attempted to be made under the provisions of Act 107 of 1880, providing for the sale of property forfeited or adjudicated to the State, it was null because the property had neither been forfeited or adjudicated to the State, and could not be proceeded against under the terms of that act; and further, that said act only provides for the sale of property which had been forfeited or sold to' the State for taxes due and delinquent in the years antecedent to 1880, and that in this case the tax collector proceeded against the property for the collection of taxes due antecedent to 1880, and for those assessed for and due in the year 1880, confusedly and without distinction, and, therefore, the sale is null.
Reference to the tax title, which is annexed to and made a part of the petition, discloses no reference to any law under which it was made, and that fact can only be determined from other recitals thereof aind by deductions therefrom. It recites that the property was offered “ for sale at public auction * * * on the Í6th of April, 1881,” and there being no bid, the Tax Collector “then readvertised the said *781 property in the same manner, to be sold to the last and highest bidder * * * on Saturday, May 21, 1881, for what said land would bring in cash; when on said 21st of May, 1881,” the defendant being the last and highest bidder, the same was adjudicated to him at the cash price of $2155.50 — a sum exceeding by nearly $500 the capital and interest of the taxes and the penalties due thereon.
At the date of this sale, May, 1881, there were only two statutes iu force, under the authority of which taxes prior to 1879 and those of 1880 could have been collected, and those were Acts 107 and 77 of 1880.
The latter is the general revenue law of that year, and, by its terms, the Tax Collector was restricted to making sale of “ the least quantity of the specific property of any debtor which any bidder will buy for the amount of, the ’taxes, interest, and costs due by said debtor.” It is obvious that the Tax Collector did not attempt to proceed under that Statute.
The former statute was doubtless enacted for the purpose of putting in force the provisions of Art. 1 of the ordinance for the relief of delinquent tax payers, but it evidently relates only to the sale of property forfeited, or sold to the State, for delinquent taxes and licenses. This appears from a casual examination of the title, as well as of the body of the act; and we have frequently so construed it. It is equally obvious that a statute which directs and requires a tax collector to sell property forfeited or sold to the State, only, does not confer upon that officer power or authority to sell property of a delinquent tax payer, in satisfaction of “taxes due the State.” It was this particular deficiency in the Act of 1880 which necessitated the passage of Act 98 of 1882, Sec. 1 of which required the Tax Collectors to advertise for sale property which had theretofore been forfeited to the State for unpaid taxes, property which had been sold to the State for unpaid taxes, and “property upon which any taxes (were) due to the State * * * prior to January 1,1880.” Therefore, if the Tax Collector did proceed under that law to enforce the ■collection of taxes due the State prior to the 1st of January, 1880, by James Surget’s estate, it can not be said of his adjudication that it is a “ title to * * * property purchased at tax sale under and by virtue of any law of this State,” in the sense of the Act of 1874. It is clear to our minds that in applying the bar of that statute to an “action to invalidate the title to property purchased at tax sale,” *782 it is our province and duty to see that the sale was made under and by virtue of some law of the State which authorized the proceedings, and our conclusion is, that the title in question fails to disclose the existence of any statute authorizing such a sale, and therefore it can not be said to be a title to property purchased at tax sale under and by virtue of any law of this State, and the prescription invoked and sustained by the judge a quo is not available to the defendant, and should have been rejected by him.
Entertaining this view, it will be necessary for us to reverse the judgment appealed from, and remand the cause to the lower court.
It is therefore ordered and decreed that the judgment appealed from be annulled and reversed, and that the cause be remanded to the court a qua for further proceedings according to law and the views herein expressed, the defendant and appellee to pay costs of appeal, and those of the lower court to await final determination of the cause therein.